WILLIAM CUMMINS *against* McLAIN AND BADGETT.

ERROR *to Pulaski Circuit Court.*

An attorney at law cannot be made liable as for money collected by him as attorney, unless it be proved either that he failed to prosecute the claims put in his hands for collection, with due and proper diligence, and that thereby the plaintiff lost the debt or claim; or that he has collected the money, and refused to pay it over on demand, or remit it according to instructions.

The attorney's liability depends upon the principle of his agency for the plaintiff, and he holds the money for him in the capacity of agent.

Before, therefore, he can be charged as being guilty of *laches* or culpable negligence, the plaintiff must demand payment, or request the money to be remitted, and the attorney must refuse to pay or remit.

Where an attorney sends a claim to another for collection, and the latter collects the money and refuses to pay it over to the plaintiff except upon the order of the former, the presumption is that the latter was the agent of the former; and this presumption amounts to full and satisfactory proof, unless it is rebutted or explained by competent testimony.

If the latter attorney, in such case, had collected the money, and refused to pay it over, the former would be liable, but not without demand on himself, and his own refusal to pay.

To sustain an indebitatus assumpsit count against an attorney, he must actually have received the money; unless from the special facts a legal presumption arises that he has received the money : and it is questionable whether even this exception prevails in case of an attorney.

This was an action of assumpsit, commenced in the court below by McLain and Badgett against Cummins. The declaration contained two counts. The first alleged a retainer of Cummins by McLain and Badgett, to collect a note due by G. G. McKinney, for three hundred and forty-three dollars and seventy-five cents, and a draft on the postmaster at Chicot for sixty-seven dollars and fifty cents, and a failure to collect. The second count was for $700, money had and received.

Non-assumpsit was pleaded, and a verdict rendered, and judgment entered, for $515 65 cents damages.

All the evidence in the case was set out in the bill of exceptions, and was as follows:

The plaintiffs first offered Cummins' receipt, in the following words: " Received, Little Rock, April 14th, 1836, of McLain and Badgett one note of hand on G. G. McKinney for three hundred and

forty-three dollars and seventy-five cents, for collection. Also, one draft on the postmaster at Chicot for $67 50. Wm. Cummins." The defendant objected to the admission of the receipt in evidence— but his objection was overruled, and he excepted.

The plaintiff then proved, by a witness, that Cummins had admitted to him that he had sent or delivered the note of McKinney to Freeman, an attorney, or something to that effect, and that Freeman had collected the money and not paid it over, and treated him very badly.

The plaintiffs then read a letter from Cummins to Mr. Notrebe, dated Sept. 24, 1839, which stated that N. H. Badgett was the owner of a claim allowed against McKinney's estate, in favor of McLain and Badgett, and that he had his (Cummins') receipt therefor, which receipt gives a full description as to the amount, &c. That the note was originally given by G. G. McKinney to P. McKinney, and assigned to McLain and Badgett; the letter then requested Mr. Notrebe to take up his (Cummins') receipt and retain ten per cent. as the fees: and that Badgett would take Mississippi money.

The plaintiffs then proved, by a witness, that Freeman had told him that he had collected the money, and that he would pay it over upon the production of an order from Cummins, or his receipt, on reaching the mouth of the river; and they both went down in the same boat. The witness further stated that the note was due a year or more before the receipt was given; and that he presented the receipt to Freeman, who refused to pay the money. The defendant objected to the admission of Freeman's statements as evidence, which objection was overruled, and his statements permitted to go to the jury, to which the defendant excepted. He then moved the court to instruct the jury to find as in case of a non-suit; which motion the court overruled, and he excepted.

PIKE, for plaintiff in error :

It is plain, that upon the evidence, no verdict could be had on the first count, which charges a failure to collect the note of hand and draft, and to prosecute and conduct a suit therefor; because the evidence introduced by the plaintiffs shows that suit was instituted, and

the claim allowed, and the money received by Freeman.   The plaintiff therefore could only recover upon their second count, for money had and received.

The overruling of the motion for instructions to find as in case of a nonsuit, brings up the whole evidence for review here, and raises the question directly, whether the evidence, or so much of it as was properly admitted was sufficient to warrant the finding of the jury on the second count.

But before we examine this matter, a preliminary question suggests itself, and that is, whether the court erred in permitting Badgett, the witness, to testify as to statements made to him by Freeman.   The rule that hearsay shall not be made evidence, lies so deeply at the foundations of the law, that it needs no quotation of authorities to enforce it—and nothing is perceived which can take these statements out of the general rule.

The statements of Freeman must have been admitted upon some vague notion that the admissions of an agent are always evidence against the principal: for there is no other possible ground on which they could have been received.   But the rule upon the subject, even admitting Freeman to have been the agent of Cummins, does not warrant the introduction of the statements made by him, and which were admitted in evidence.

It is true, that if the agent, at the time of making a contract for his principal, makes any representation, declaration, or admission, touching the matter of the contract, it is the representation, declaration, or admission of the principal; and as such, admissible against the principal.   *Story on Agency*, 126.   But in this case, no contract was ever made by Freeman, as the agent of Cummins, with the plaintiff below; and his statements were made long subsequent to his receipt of the note from Cummins.   And the representation, declaration or admission of the agent does not bind the principal, if it is not made at the very time of the contract, but on another occasion.   See *Story on Agency*, 126, and cases there cited.   And as Sir WILLIAM GRANT said, in *Fairlie vs. Hastings*, 10 *Ves.* 126, " what one man says, not upon oath, cannot be evidence against another man."   And with regard to agents, the exceptions are, that " what the agent has said may be

Cummins *against* McLain and Badgett.

what constitutes the agreement of the principal; or the representations or statements made, may be the foundation of, or the inducement to, the agreement. So with regard to acts done, the words with which those acts are accompanied, frequently tend to determine their quality. The party, therefore, to be bound by the act, must be affected by the words. But except in one or the other of those ways," he says, "I do not know how what is said by an agent can be evidence against his principal. The mere assertion of a fact cannot amount to proof of it; though it may have some relation to the business in which the person making that assertion was employed as agent." And he concludes that "it is impossible to say that a man is precluded from questioning or contradicting any thing which any person has asserted as to him, as to his conduct or agreement, because that person has been an agent of his. If any fact, material to the interest of either party, rests in the knowledge of an agent, it is to be proved by his testimony, not by his mere assertion. And see the opinion of KENNEDY, J. in *Hannay vs. Stewart*, 6 *Watts*, 489, quoted in *Story on Agency*, 128.

The principle will be found well settled that the statements of an agent generally, though made of the business of his principal, are not to be taken as equivalent to the admissions of the principal; and they come under the general rule of hearsay, unless made by him at the very time of entering into the agreement, or of transacting the business, under the authority of the principal.

Laying out of question then, the statements of Freeman, the testimony is that Cummins, on the 14th of April, A. D. 1836, received the note on McKinney from McLain and Badgett, for collection, and sent it or delivered it to another attorney for collection: that Cummins, by letter, stated the claim to have been allowed, and admitted to Col. Fowler that Freeman had collected it, and had not paid it over.

The writ was issued January 19, 1839, and it does not appear that any portion of the money was at that time collected; and there is no proof whatever as to the draft, except Cummins' receipt. The only proof of the collection of the money is contained in the admissions Cummins made to Col. Fowler. It does not appear when those admissions were made, or at what time the money was collected; and

Cummins *against* McLain and Badgett.

as the bill of exceptions specially sets out *all* the testimony in the case, the court cannot presume either that the money was collected, or the admissions made previous to the commencement of the suit. The letter of Mr. Cummins, of what date we know not, unless it was Sept. 24, 1839, only shows that the claim was allowed, and directs it to be paid over to Mr. Badgett.

But laying this out of view, and admitting that it could now be presumed that the money was collected by Freeman before the suit was commenced, we contend that there is no proof that Cummins received the money either by himself or his agent: and if not, of course there could be no recovery on the second count.

What was the scope of Freeman's agency? The note was sent or delivered to him by Cummins, to be allowed against an estate. Is there any proof whatever that Freeman was authorized by Cummins to receive the money? Not the slightest. On the contrary, the letter of Cummins, introduced by the defendants, repels any such presumption and shows that Cummins directed a third person to pay it over. That third person, it appears, could not do so, because Freeman had received it. If then Freeman was not authorized by Cummins to receive the money when collected, the receipt of it by him was not a receipt by Cummins. There is no proof that he was generally employed by Cummins to obtain allowances and receive the amount of them when paid; and thererefore no presumption that he was authorized to receive the money can arise in that way. There is no proof that he was specially authorized by him in this particular instance to receive it, or that he had received money under like circumstances in other instances: and assuredly it was not *incidental* to his employment for the purpose of obtaining the allowance, that he should also have authority to receive the money. Where a claim is received by by an attorney on which to bring suit, from the owner of the claim, the power and authority to receive the money is also implied—but no such authority can be implied from the transmission of a claim from one attorney to another for the purpose of having the claim allowed in the Probate Court. That one attorney is employed by another to attend to the progress of a case does not show also that he was authorized to receive the proceeds of the judgment.

At all events, upon the ground of error in the admission of Freeman's statements the judgment must be reversed.

FOWLER, *Contra:*

The first error assigned is that the court below refused to exclude from the jury Cummins' receipt for the collection of the said note on McKinney and the draft on the said Post Master. Upon what principle of law this supposed error is predicated the counsel for McLain and Badgett, are at a loss to perceive, and therefore advance no argument against it. The receipt was admissible under either count; in the first to show the undertaking as an attorney, and in the second as conducing to prove that he did receive the money for the use of McLain and Badgett. The second assignment, as to the statements of Freeman is equally untenable. The proof shows that Cummins had constituted Freeman his sub-agent to collect the money. He then certainly became responsible for Freeman's acts in relation to its collection; and Freeman's statements that he had collected the money and would pay it over are certainly competent testimony against Cummins on the fact of such sub-agency being established. 4 *Wend.* 394; 7 *Wend.* 446; 11 *Wend.* 87; 6 *Cowen,* 351; 8 *Cowen,* 198; 15 *Johns. Rep.* 44; 16 *Johns. Rep.* 86.

The receipt, the letter, the verbal acknowledgments of Cummins, the admissions of Freeman, all taken together—or the receipt, the letter, or admissions of Cummins *separately*—establish a case which fully warrant the verdict: the jury could have found no other. The court could not have given the instruction asked for to the jury without violating the first principles of law; and usurping their province by deciding facts, which belongs to the jury exclusively.

Cummins, in the court below, waived all former exceptions taken by him to the evidence, even supposing such objections valid, by his motion for instructions as in case of non suit, upon which he *ipso facto* rested his case. And this motion being made upon a supposed defect in the evidence of the adverse party, the court was not only bound to take the evidence as true, but also to infer from it every fact which the jury might rationally and fairly infer. And upon this position could the court fairly draw any other inference than that Cummins

was responsible to the plaintiff—that a case was made out—and refuse to give instructions contrary to the weight of the evidence? 1 *Bibb's Rep.* 209, *Gallatin vs. Bradford.*

Where evidence of debt is left with an attorney, who gives a general receipt therefor, it will be presumed that he received it for collection; and if an action be brought against him for negligence in its collection, it is incumbent on him to show that he received it *specially*, and for some other purpose. 3 *Johns. Rep.* 185, *Executor of Smedes vs. Elmendorff.*

Freeman, after the allowance or judgment, had authority to receive the money. 10 *Johns. Rep.* 220; 6 *Johns. Rep.* 51.

CUMMINS, in response:

By the rules of law—rules inflexible, and to which there are no exceptions—the plaintiff must prove his allegations, and then he is entitled to a recovery. He cannot prove things different from his allegations. If his proof varies the least, in substance, from his alleged grounds of action, he must lose his suit. Immaterial variations, it is true, are not regarded; but where the variations reach the substance, the material body of his charge, it is fatal.

Let us apply this rule, alike founded in common sense and common justice, to the present case. The record, before the court, shows the whole evidence adduced in the case, certified by the Judge below, and that upon this evidence, a motion for judgment of nonsuit was submitted to the court, and overruled.

Does this evidence, thus certified, support the first grounds of action alleged? It does not. The evidence discloses and proves that McKinney was dead, and proceedings, were, by law, to be had in the County or Probate Court, to have the claim allowed against the estate. The evidence also shows that the claim was allowed, and that all was done which, under the law, could be done by the common attorney. By the administration laws of the State, in force since the beginning of this transaction, claims against deceased persons' estates could only be collected by presenting the claims and having them allowed, and then at designated times. The executor or administrator of such estate, under the order and direction of the Court of Probate, could

provide means of payment of claims allowed. This is the well known, and legal course. The time of the payment of such claims, thus allowed, depended on the discretion of the Probate Court, as applied to the peculiar character of the estate left by the deceased. The time of payment was by no means certain or fixed by law. This evidence, then adduced by the plaintiffs themselves, for the defendant offered none, proves just the reverse of the allegations upon which the claim is first grounded: the neglect of duty, and the want of due diligence as an attorney. It shows, conclusively, that all was done within the legal power of an attorney. The allowance was made against McKinney's estate. More he could not do. He could not fix the time of payment, for the plain reason that he had nothing to do with the discretion of the Judge of Probate, who had the entire power to order payment, and order the collection of funds of the estate to meet and discharge its liabilities. The evidence then, thus far, clearly defeats the action. No neglect is shown; and on this the plaintiffs rely in the first count of their declaration. They allege no neglect as the grounds of action. They, to be able to recover, must, of course, prove that neglect; upon which they allege their right depends. The receipt of the defendant for the claims proves that he had them; nothing more. That he had them for legal action and collection, according to law. That he was bound to do all that the law placed in his power, reasonably to do; but does not prove that he was to do what the law had placed in the discretion of the Probate Judge. The time of payment was left by law with that tribunal, consequently the attorney cannot be held responsible for his discretion. The receipt of Cummins proves no neglect. The neglect is the material allegation in the first count; and to enable the plaintiff to recover on this count, he must prove directly what he alleges. Hence the position taken for the defendant is undoubtedly correct. The receipt, to enable the plaintiffs to raise the grounds of a recovery thereon should have been made the grounds of the action, as a special assumpsit, or covenant, as it was, but it did not prove neglect to do what it contained the promise of doing. A man's written obligation to build a house or do any other particular or special thing is surely not proof of his neglecting to do it. How

then is the undertaking of an attorney to do a piece of business, reduced to writing, proof that he did not do it? Surely argument cannot be necessary to confute so palpably false a position. The rules of law never do presume a man has broken his contract. They invariably require proof before damages are awarded for a breach. Then the evidence adduced directly destroys the grounds of action in the first count. The pretence that the length of time fiom the giving of the receipt to the bringing of the suit was sufficient legal presumption of liability against the defendant is too palpably erroneous to merit a reply. The time of paying the claim, when allowed, depended on the discretion of the Probate Judge. The time of bringing the suit, and its termination too, depended on the caprice of the plaintiffs, if you please, and to argue against an attorney's liability on either of these grounds, and these are all, would *be* mockery. The evidence, therefore, in no respect, sustains the count for neglect and the recovery cannot be supported in that respect.

The remaining inquiry is, does the evidence support the second grounds of the action alleged, " money had and received to the use of the plaintiffs?"

There is no proof offered that the defendant received the money. No attempt is made to establish that fact. The proof of a receipt was surely indispensable, as this was the allegation. Proof that Cummins requested Freeman to get the allowance before the court is surely not proof that he authorized him to receive the money. No proof whatever is offered to show that Cummins either sanctioned or in any way authorized the receipt of the money by Freeman. *Surely* Cummins' duty was faithfully performed in having the allowance made, which Cummins got Freeman to do for him. Authorizing him to get the allowance was not authorizing the taking of the money. The receipt by Freeman was no receipt by Cummins, unless it was expressly proven that Cummins gave the authority. So far as he acted as agent for Cummins, the business was done. Had this been negligently or unfaithfully done, and the note had been lost, or the claim not presented, defendant would have been responsible for this, but not on the count for money had and received. Defendant had no other duty to perform but to get the allowance. The plaintiffs, however

adduced proof, so far as it amounts to evidence at all, tending to show that defendant did not authorize Freeman to receive the money. His order, (not on Freeman, but on the administrator of the estate, in favor McLain and Badgett) shows, conclusively, that he did not intend, and never had intended to authorize Freeman to get the money. This letter or order shows, really, the whole truth of the transaction. Defendant assumed no control over the money, and really had not, perhaps, a legal power to control it. The order given was intended to describe the claim, to enable the administrator to pay the proper amount to the persons entitled; and was not an assumption of the power to control the money. Can a defendant, from the above facts, be held bound on the count for money had and received? Surely not; for he neither received it nor empowered another to receive it. Defendant is no more liable than any other man in the community. Can an attorney be liable for money improperly taken in hand by an irresponsible person? Suppose a man, without authority, by false pretences, fraud or force, obtains money from a sheriff after the money is collected—an administrator or any other person—is the attorney, employed for the collection of this money, responsible for the crime or misconduct of the person so taking it? Undoubtedly not. Is it not the universal law that all persons owing money must take care to whom they pay, and see that their discharge is legal and from a proper source? And in the other case of taking by violence, no person is chargeable but he who commits the violence. In the case of the debtor paying to an unauthorized individual he himself is responsible for his own indiscretion, and must pay the money over again, and cannot charge his creditor with it. Now this money, so far as the facts are shown, and the truth of the matter is, was fraudulently obtained, and without any authority whatever. Can defendant be held responsible for this fraud, in which he had no concern, and a different rule of law to be dealt to him from that which applies to all others? This, the defendant is well assured, will not be the case. The plaintiffs chose to rest their chance of recovery on the presumptions they hoped to raise on the receipt and other circumstances, rather than to attempt proving a direct legal liability. This they knew they could not do; and perferred the chances resulting from

intendments, and the known inclination of jurrors to find against an attorney.

The testimony given by Col. Fowler, which I have no doubt is defectively stated on the record, yet being there, its indefinite character must be remarked. A conversation is given with defendant touching the transaction. It is said to be something like the conversation with defendant—some expression of this sort—stating a mere resemblance, is used, but what kind of resemblance, or how far like or unlike, is not stated. This, of course, cannot amount to any thing.

Another point, disclosing palpable error, is that the statements of Freeman were hearsay, now received to charge defendant in this case. It has been said, in argument, they were immaterial indeed! Why were they then pressed before the jury against the objections of defendant? The court below decided that they were good evidence to the jury, by admitting them, and the jury were bound to consider them as material. The court (admitting the argument now) must have erred in this decision; and whether the jury founded their verdict on the evidence or not cannot be determined. It may, as the court below favored and admitted the testimony, have been the principal evidence in producing the verdict. The rule is inflexible that it is error to admit to a jury illegal evidence for the reason above stated, and renders the grounds, on which the verdict rests, uncertain. The admission of this grossly illegal evidence throws a dark shade over every act of the court below in rendering this judgment. Waiving the effect of the shades of the case, the defendant relies on the substantial legal errors for a reversal of this judgment.

DICKINSON, *Judge*, delivered the opinion of the court:

An attorney at law cannot be held liable as for money had and collected by him, as such attorney, unless it be first proved that he either failed to prosecute the claims put into his hands for collection with due and proper diligence, and that thereby the plaintiff lost his debt or claim; or that he had collected the money, and refused to pay over on demand, or to remit it according to instructions. The attorney's liability rests upon the principle of his agency for the plaintiff, and he holds the money for his principal in that capacity. The

plaintiff must then demand payment or request the money to be remitted, and there must be a refusal to pay or remit before the attorney can be charged as being guilty of laches or culpable negligence. It would be in opposition to the nature of the trust created between the parties, as well as against good faith and justice, to hold the attorney liable before demand and refusal to pay or remit the money. This principle is unquestionably settled by all the authorities. *Taylor vs. Bates*, 5 *Cowen*, 376; *Rathbone vs. Ingalls*, 7 *Wend.* 320; *Ferris vs. Paris*, 10 *J. R.* 285. The application of the rule just cited will test the question now before the court. The proof wholly fails to show that the plaintiff ever made any demand for the money of the defendant, or that he refused to pay it over according to their instructions. The proof then fails to sustain the first count in the declaration, which charges the attorney with culpable negligence. It is not shown that the money ever came to the hands of Cummins, or that he has collected it, unless his sending the claim of McKinney to Freeman to collect, and he, Freeman, receiving the money, can be regarded as a collection by Cummins, upon the ground that he had constituted Freeman his agent in the business. The evidence unquestionably shows that Cummins sent the claim to Freeman for collection, and that the claim was allowed, and that Freeman had collected and refused to pay it over to the plaintiffs. There is no evidence that the draft upon the Post Master of Chicot, was either accepted or paid, or that he was able to pay it. These facts certainly raise a strong presumption that Freeman was Cummins' agent, which would amount to full and satisfactory proof, unless rebutted or explained away by other competent testimony. If Freeman collected the money, and refused to pay it over, Cummins would be answerable for such default or negligence upon his original implied undertaking. But then to charge him on account of such liability, as an attorney at law, a demand and refusal must be proved on the trial. The demand must be made of Cummins and not of Freeman, and a refusal on his (Cummins') part to pay over must appear before the action can be sustained. For the law presumes he will pay over the money collected by him as attorney, until the contrary is affirmatively and satisfactorily shown. If Freeman collected the money as Cummins' agent, it was but the act of

Cummins himself; and therefore was collected in the character and capacity of an attorney, and of course Cummins cannot be held liable without proving demand and refusal on his part to pay it over.

The proof certainly does not sustain the only remaining count in the declaration, which is *indebitatus* assumpsit. It is a general rule that to sustain such count, the defendant must actually have received the money. The receipt, however will, under peculiar circumstances be presumed. 1 *Chitty's Pleadings* 341; *and cases there cited; Israel vs. Douglas,* 1 *H. Blackistone,* 239. But such presumption arises from the special facts of the case, which carry a legal inference that the money has actually passed into the hands of the defendant, or been received by him. In the present case, no such inference can arise, because the attorney's liability only accrues, upon demand and refusal before the institution of the suit. His contract was to collect the money as an attorney, and he can only be charged in that capacity by proving culpable negligence. It is then very questionable whether an attorney can be made liable upon an *indebitatus* count, unless the plaintiff first shows that the money actually came into his possession. Be that however as it may, it is certainly clear that he is not liable unless it be first demanded of him, and he refuses to pay it over. The law presumes that the attorney, like every other officer, will do his duty, until the contrary affirmatively appears. And the presumption is fortified and strengthened by the confidence the plaintiffs have reposed in his integrity and capacity.

It necessarily follows, from the principles thus established, that the court below erred in refusing to instruct the jury as in case of non suit. The bill of exceptions contains all the evidence that was introduced upon the trial, and that wholly fails to show that the plaintiffs made a demand of the defendant before the institution of this suit, or that he refused to pay over any moneys which he may have collected as an attorney.

The judgment of the Circuit Court must therefore be reversed.